# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 2:13cr136 |
| | ) | **Electronic Filing** |
| MONTAY KING | ) | |

## MEMORANDUM ORDER

AND NOW, 29th this day of May, 2015, upon due consideration of defendant's motion for reconsideration and the parties' submissions in conjunction therewith, IT IS ORDERED that [66] the motion be, and the same hereby is, granted in part and denied in part. The motion is granted to the extent defendant seeks to raise a challenge to the search of December 20, 2012, based on his wife's registered ownership of the Ford Expedition; and

IT FURTHER IS ORDERED that upon due consideration of the supplemental challenge to the search, defendant's supplemental motion to suppress be, and the same hereby is, denied for want of standing and otherwise denied for failing to establish that the search was undertaken in violation of defendant's Fourth Amendment rights.

Defendant's contention that his wife's registered ownership of the vehicle rendered the discovery of the guns and contraband unconstitutional is misplaced. The Fourth Amendment protects citizens against "unreasonable searches and seizures" of their "persons, houses, papers, and effects." U.S. Const. amend. IV. Fourth Amendment rights are personal rights, and "may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure." Simmons v. United States, 390 U.S. 377, 389 (1968).

Protection under the Fourth Amendment is available only if the governmental intrusion

extends to an area in which the person challenging it has a "constitutionally protected reasonable expectation of privacy." New York v. Class, 475 U.S. 106, 112 (1986) (quoting Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). In other words, the person challenging the governmental action must have standing. Alderman v. United States, 394 U.S. 165, 174 (1968). Standing exists if the defendant can establish that he had "a legitimate expectation of privacy in the invaded place." United States v. Cortez-Dutrieville 743 F.3d 881, 883 (3d Cir. 2014).

The burden of establishing standing rests with the defendant. United States v. Salvucci, 448 U.S. 83, 86-95 (1980); Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978). To meet this burden the defendant must establish a reasonable and actual expectation of privacy in the areas searched and/or the items seized. Rawlings v. Kentucky, 448 U.S. 98, 104-106 (1980); United States v. Baker, 221 F.3d 438, 441 (3d Cir. 2000).

Determining whether a legitimate expectation of privacy has been shown involves two specific inquiries: "(1) whether the individual demonstrated an actual or subjective expectation of privacy in the subject of the search or seizure; and (2) whether this expectation of privacy is objectively justifiable under the circumstances." United States v. Donahue, 764 F.3d 293, 298-99 (3d Cir. 2014) (quoting Free Speech Coal., Inc. v. Att'y Gen., 677 F.3d 519, 543 (3d Cir. 2012)). To show a subjective expectation of privacy, the defendant must demonstrate that he "took normal precautions to maintain his privacy." Rawlings, 448 U.S. at 105. An objective expectation of privacy exists only when supported by "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." Minnesota v. Carter, 525 U.S. 83, 88 (1998) (quoting Rakas, 439 U.S. 128 at 140).

Rakas and its progeny have made clear that more than temporary occupancy or possession of a vehicle is needed to maintain standing. The courts of appeal consistently have followed its principles. See United States v. Martinez, 983 F.2d 968, 972-73 (10th Cir. 1992) (non-owner driver of vehicle who asserted standing based upon mere immediate possession of it and keys failed to produce evidence sufficient to establish a reasonable expectation of privacy in its trunk); United States v. Jefferson, 925 F.2d 1242, 1249 (10th Cir.) ("mere control [of a vehicle] is not sufficient to establish a protectable Fourth Amendment privacy right"), cert. denied, 502 U.S. 884 (1991); United States v. Roberson, 6 F.3d 1088, 1091 (5th Cir. 1993) ("typically, a passenger without a possessory interest in an automobile lacks standing to complain about its search because his privacy expectation is not infringed."); United States v. Sanchez, 943 F.2d 110, 114 (1st Cir. 1991) (individual who had only "casual" and temporary possession of vehicle "lacked a sufficient expectation of privacy in the car to entitle him to challenge its seizure and search."). Other courts have reached the same conclusion. See United States v. Vaugns, 202 F. Supp.2d 572, 576 (E.D. Tex. 2002) (passenger and unauthorized driver of rental vehicle lacked standing to challenge a search due to their lack of property or possessory interest in automobile); Varner v. United States, 685 A.2d 396, 398 (D.C. Ct. App. 1996) (mere presence in and temporary command over a vehicle are insufficient to create a legitimate expectation of privacy).

On reconsideration, defendant now affirmatively contends that the vehicle belonged not to him, but to his wife, and that there was no evidence that he had possession and control of it at any time during the four months prior to the search. To the extent defendant asserts that he did not have a possessory or privacy interest in the vehicle, he effectively has eviscerated his ability to challenge the warrantless search of it. Rawlings, 448 U.S. at 106. And to the extent that he

3

seeks to exclude the use of the seized contraband based on his wife's ownership, he lacks standing to do so. United States v Genser, 582 F.2d 292, 305 n.24 (3d Cir. 1978) (the "established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence.") (quoting Alderman, 394 U.S. at 171-72).

Assuming for the purposes of argument that defendant does have standing to challenge the search, the officers had reasonable suspicion to justify a search of the vehicle. Defendant argues that items found during the search of the vehicle could reasonably have belonged to his wife. But this additional fact did not strip the officers of the constitutional grounds they had to seize the contraband.

Generally, the Fourth Amendment requires that officers have both probable cause and a warrant to conduct a search. In the case of parolees, however, the threshold level is reduced to reasonable suspicion and a warrant is not required. United States v. Baker, 221 F.3d 438, 443 (3d Cir. 2000). The special needs of the probation/parole system justify this lower standard. Griffin v. Wis., 483 U.S. 868, 873-874 (1987); Cf. United States v. Hill, 967 F.2d 902, 909 (3d Cir. 1992) ("A probable cause requirement would divert the officer's attention from his client's individual characteristics and needs, and would interfere with appropriate supervision.") Thus, it is now well-settled that officers may conduct searches of a parolee or probationer's vehicle or home based solely on reasonable suspicion. United States v. Knights, 534 U.S. 112, 121 (U.S. 2001) ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.")

Ascertaining whether an officer has reasonable suspicion to conduct a search often involves an imprecise judgment. United States v. Robertson, 305 F.3d 529, 532 (3d Cir. 1998). The term is a common sense, non-technical conception that deals with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ornelas v. United States, 517 U.S. 690, 695 (1996) (quoting Illinois v. Gates, 462 U.S. 213 (1983)). As such, the standard is "not readily or even usefully reduced to a neat set of legal rules." Id.

As a general matter reasonable suspicion is present whenever an officer has "a particularized and objective basis" for suspecting an individual has been or is about to engage in criminal activity. Id. (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). More specifically, a limited investigative search may be conducted when an officer has "specific articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1 (1968).

A determination of whether an officer has reasonable suspicion is predicated on the events leading to the seizure or search, and the analysis is focused on whether those historical facts, when viewed from the standpoint of an objectively reasonable police officer, give rise to reasonable suspicion. Ornelas, 517 U.S. at 696. In each case the question is whether the officer had a "particularized and objective basis" for suspecting the criminal conduct in question. United States v. Arvizu, 534 U.S. 266, 273-74 (2002). "This process allows officers to draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Id. (quoting Cortez, 449 U.S. at 418); Robertson, 305 F.3d at 167. The Third Circuit repeatedly has reiterated that in Arvizu the Court "accorded great deference to the officer's knowledge of the

5

nature and the nuances of the type of criminal activity that he had observed in his experiences, almost to the point of permitting it to be the focal point of the analysis." United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003) (quoting Nelson, 284 F.3d at 482).

Here, defendant had granted his probation officers authorization to enter his residence or any property or vehicle under his control and conduct a search if there was reasonable suspicion to believe that defendant was in violation of the terms of his probation. To obtain probation defendant was required to sign consent forms permitting his probation officer to search whenever there was reasonable suspicion to believe that contraband or a violation of the conditions of probation would be found. He also was enrolled in an electronic monitoring program, the rules of which included a provision permitting his probation officers access to his residence at any time for the purposes of supervision. Enrollment also required defendant to acknowledge that his "person, vehicle, and residence (or that portion of another's under [his] control)" were subject to search. Thus, defendant had acknowledged and accepted broad authorizations for his probation officer to conduct inspections and searches incident to his supervision.

Defendant's supervising probation officers were aware of his prior criminal history. Defendant had convictions and served time for a federal unlawful weapons crime and a state drug trafficking crime. His immediate supervision was imposed as a result of a felony conviction for fleeing and eluding. His three-year sentence of probation included one year of intermediate punishment in the form of home detection with electronic monitoring.[1]

Defendant's criminal history and sentence of intermediate punishment resulted in defendant being supervised by a probation officer assigned to the "high impact unit." The unit

---

[1] Defendant had outstanding fees from prior terms of electronic monitoring and an installation fee, which were not paid when he started his term of probation on April 10, 2012. The probation officer had to initiate two technical violation charges before defendant paid these fees. Defendant was then placed on electronic monitoring on December 4, 2012.

6

supervises offenders who are "more high-risk." Upon receiving responsibility for defendant's supervision, the supervising probation officer reviewed defendant's criminal history and conducted searches in the Allegheny Standardized Arrest Program and various forms of social media.

Defendant had committed a number of probation violations in the days immediately prior to December 20, 2012. First, he had gone outside the authorized boundaries of his electronic monitoring on several occasions over the course of several days. The first of these occurred just four days after defendant had been placed on electronic monitoring. They continued to occur the next day and intermittently thereafter. This pattern of violations prompted the probation officer to send another officer to defendant's residence on December 17, 2012. Upon arriving at the residence, the officer smelled marijuana and discovered liquor bottles in the home. An instant urinalysis revealed that defendant had been using marijuana, a fact he then admitted to the officer.

Defendant's multiple violations of probation and electronic monitoring prompted his probation officer to initiate a compliance check of defendant's residence on December 20, 2012. During the course of that compliance check the probation officers entered defendant's bedroom and discovered a box of sandwich baggies on the dresser and bottles of alcohol next to the bed.

The officers then conducted a more thorough search of the premises. Searching the bedroom uncovered four cell phones, a disguised digital scale, a marijuana pipe, and over $700.00 in cash, a portion of which was in the pocket of a pair of men's pants. The scale had white residue on it. Defendant was then taken into custody.

During the search of the bedroom car keys were found on the dresser that were to a Ford vehicle. A black and blue 1998 Ford Expedition was in front of the residence. It had a flat tire,

had fallen into a state of disrepair, and was not being actively driven.

The officers were aware of information which indicated that defendant had at least a possessory interest in the Ford Expedition. Prior investigation had uncovered social media postings that suggested the vehicle belonged, at least in part, to defendant. First, in a photograph of the vehicle posted on Facebook in July 2012 defendant referred to the vehicle as "my baby." Second, defendant's rap video posted on YouTube in July 2011 showed him posing next to, on top of, and inside the vehicle.

Probation Officer Maroni walked from the house over to the Ford Expedition. It had very dark tinted windows. Officer Maroni approached the rear driver's side window, leaned up against it, placed his hands around his eyes to shield incoming light, and peered into the vehicle. He saw what appeared to be the barrel of an assault-style rifle with the stock of the firearm wrapped in a sweatshirt. He then entered the vehicle with the keys taken from the bedroom. An additional assault rifle, a .22 caliber revolver, thirty bricks of heroin, and various forms of paraphernalia used to make stamp bags of heroin were discovered in, and seized from, the vehicle.

Against this backdrop defendant's assertion that the wife's ownership of the vehicle undermined the officers' basis for searching it is unavailing. The officers had a valid basis for approaching the vehicle. They were well aware of defendant's criminal history, his recent probation violations, and the evidence of drug trafficking that had been discovered in the residence when Officer Maroni decided to approach the vehicle. Defendant had been convicted of firearm and drug trafficking crimes. The officers were also informed by County law enforcement that defendant was well-known for his leading role in drug trafficking activities in the East End Neighborhoods of Pittsburgh. The probation officers had discovered posts on

8

Facebook that suggested defendant had possessed controlled substances and large amount of cash after April 10, 2012, when he was placed on probation. He had repeatedly been non-compliant with the rules of electronic monitoring and had very recently tested positive for illegal drug use. They had discovered baggies, a digital scale, and four cellphones in defendant's bedroom, all of which were indicative of drug trafficking activity. At that juncture they had reasonable suspicion to walk about the entire premises to determine whether there was additional evidence of defendant violating the terms of his probation.

The officers also had a reasonable basis to believe that defendant exercised as least some control over the Ford Expedition. Defendant's own activities on Facebook and YouTube indicated that he treated the vehicle as his and he exercised dominion and control over it. The fact that defendant's wife also had legal ownership of the vehicle and, just like the residence, may have had joint dominion and control over the property, did not undermine the specific and articulable facts giving rise to a reasonable inference that defendant had a degree of control over the vehicle.

In short, it is clear that the probation officers' visual inspection of defendant's residence for compliance gave rise to specific and articulable facts indicating that drug trafficking activities were occurring on the premises. They thus had reasonable grounds for further visual inspection of the entire property. In other words, they had legal justification to approach and look into the Ford Expedition. When Officer Maroni did so, he saw, in plain view, a firearm inside the vehicle, which he could reasonably and objectively believe belonged to defendant. Under these circumstances the officers' seizure of the weapons and contraband on December 20, 2012, was in compliance with the Fourth Amendment.

Defendant argues that the information that led the officers to believe the Ford Explorer

9

belonged to him was stale because the Facebook posts and YouTube video were between five and eighteen months old and there was no recent evidence linking him to the vehicle. This argument fails because staleness is determined not only by the age of evidence, but also by the type of evidence and the context of the situation.

It is beyond reproach that the age of the information used to justify a search or seizure under the Fourth Amendment is a factor in determining whether the intrusion was reasonable. United States v. Harvey, 2 F.3d 1318, 1321 (3d Cir. 1993) (citing United States v. Forsythe, 560 F.2d 1127, 1132 & n. 6 (3d Cir.1977) and United States v. McNeese, 901 F.2d 585, 596 (7th Cir. 1990)); accord United States v. Zimmerman, 277 F.3d 426, 434 (3d Cir. 2002) (same). "If too old, the information is stale, and [grounds for the search or seizure] may no longer exist." Harvey, 2 F.3d at 1321 (citing McNeese, 901 F.2d at 596). However, the age of the information does not in itself determine staleness. Instead, the nature of the crime and the type of evidence must be considered. Id. (citing United States v. Tehfe, 722 F.2d 1114, 1119 (3d Cir. 1983), cert. denied, 466 U.S. 904 (1984); Forsythe, 560 F.2d at 1132; and United States v. McCall, 740 F.2d 1331, 1135-36 (4th Cir. 1984)); accord Zimmerman, 277 F.3d at 434 (same); United States v. Williams, 897 F.2d 1034, 1039 (10th Cir. 1990), cert. denied, 500 U.S. 937 (1991) ("The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant"). The import of the date of the information must be assessed in context and through the totality of the information available.

The fact that the Facebook and YouTube posts were five and eighteen months old at the time of the search is insignificant when defendant's association with the vehicle is considered in the overall context of the situation. Defendant had treated the vehicle as his own and used it in a manner that was consistent with him having dominion and control over it. That treatment and

asserted possession was neither causal or temporary. The vehicle was parked directly in front of the marital residence which was being shared by defendant and his wife. The officers had a valid basis for a probation compliance check when they entered the marital property on December 20, 2012, which ripened into reasonable suspicion that drug trafficking activity was occurring on the premises. They thus had reasonable grounds to inspect visually all of the property which defendant shared with his wife. That property included the Ford Expedition. A visual inspection of the vehicle led to the discovery of a firearm in plain view, which the officers reasonably believed to be under defendant's control.

Shauniesha Wesley's legal ownership of the vehicle did not diminish the reasonable ground supporting the officer's objective belief that defendant had a sufficient degree of control over the vehicle to place it within the scope of a visual inspection, which ripened into a justified search and seizure. Consequently, defendant's motion for reconsideration properly has been denied.

.

s/David Stewart Cercone<br>
David Stewart Cercone<br>
United States District Judge

cc: Charles A. Eberle, AUSA
Charles J. Porter, Jr., Esquire

(*Via CM/ECF Electronic Mail*)